UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FELIX CRUZ-ACEVEDO,<br><br>                Petitioner,<br><br>    v.<br><br>BRUCE SCOTT et al.,<br><br>                Respondents. | CASE NO. 2:26-cv-01654-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Felix Cruz-Acevedo's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court grants the petition in part and denies it in part.[1]

## I.    BACKGROUND

Cruz-Acevedo is a native and citizen of Mexico who entered the United States without inspection in 1996 at the age of five. Dkt. No. 8 at 1. He has resided in the country ever since. Dkt. No. 1 at 4. He has no criminal record and has a brother and sister who live in the United States. Dkt. No. 2 at 5. On February 3, 2026, United States Border Patrol and Homeland Security Investigations encountered Cruz-Acevedo at a construction site near Kalispell, Montana and

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

detained him. Dkt. No. 8 at 2. The same day, Immigration and Customs Enforcement ("ICE") Office of Enforcement and Removal Operations ("ERO") served Cruz-Acevedo with a Notice to Appear, charging him as removable under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§1182(a)(6)(A)(i), 1182(a)(7)(A)(i)(I). *Id.*; *see* Dkt. No. 7-1. On February 5, 2026, Cruz-Acevedo was transferred to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Dkt. No. 8 at 2.

On March 27, 2026, the Tacoma Immigration Court held a bond hearing for Cruz-Acevedo. *Id.*; *see* Dkt. No. 7-2. The Immigration Judge ("IJ") determined that the court did not have jurisdiction to order bond because Cruz-Acevedo's detention was mandatory under 8 U.S.C. § 1225(b), and even "if the Court had jurisdiction, the Court would deny bond" based on flight risk. Dkt. No. 8 at 2; Dkt. No. 7-2 at 2. On April 16, 2026, after Cruz-Acevedo appealed, the same IJ issued a "Bond Memorandum" explaining in more detail her decision to deny bond. Dkt. No. 7-3. She stated that "[b]ased on the record the court does not find the respondent is a flight risk"; "[h]owever, given the lack of available relief the court finds he is a flight risk." *Id.* at 4–5. Cruz-Acevedo's appeal remains pending before the Board of Immigration Appeals ("BIA"). Dkt. No. 8 at 2.

On March 31, 2026, prior to the issuance of the IJ's bond memorandum, Cruz-Acevedo filed a habeas petition in this district. *Cruz-Acevedo v. Scott*, 2:26-cv-01103-TMC, Dkt. No. 1 (Mar. 31, 2026). On April 27, 2026, Judge Cartwright denied his petition, finding that although Cruz-Acevedo was "subject to discretionary detention under § 1226(a)," he did not claim "that either the procedures used at the bond hearing violated the Constitution or that the flight risk finding was an abuse of discretion"; instead, his claim "was based solely on the mandatory detention ground." *Cruz-Acevedo v. Scott*, No. 2:26-CV-01103-TMC, 2026 WL 1135912, at *2 (W.D. Wash. Apr. 27, 2026). While the IJ's the flight risk finding "preclude[d] relief on that

ground," Judge Cartwright noted that claims attacking the constitutional adequacy of the bond hearing "could be presented in a separate habeas petition." *Id.*

On April 13, 2026, after the bond hearing but prior to the issuance of the IJ's bond memorandum, a different IJ conducted a merits hearing and denied Cruz-Acevedo's claims for asylum, withholding of removal, and protection under the Convention Against Torture. Dkt. No. 8 at 2; Dkt. No. 7-4. On May 22, 2026, the BIA dismissed Cruz-Acevedo's appeal of this order "due to [his] failure to timely file his appeal." Dkt. No. 8 at 3.[2]

On May 14, 2026, Cruz-Acevedo filed the instant petition for a writ of habeas corpus. Dkt. No. 1. On May 29, Respondents[3] filed a return, Dkt. No. 6, and on June 3, Cruz-Acevedo filed a traverse, Dkt. No. 9. Because Cruz-Acevedo included new arguments in his traverse, the Court exercised its discretion to order Respondents to file a reply by June 5, 2026, Dkt. No. 11, and they did so, Dkt. No. 12.[4]

## II.    DISCUSSION

In his habeas petition, Cruz-Acevedo alleges that the IJ "abused her discretion in the bond determination and that the procedures employed violated his right to due process." Dkt. No. 1 at 2; *see id.* at 6–8. Specifically, he argues that the IJ's flight determination was self-contradictory

---

[2] In his traverse, Cruz-Acevedo asserts that his appellate counsel is "taking steps to remedy" the dismissal of his appeal of the IJ's merits findings, "further confirming that [he] has not abandoned administrative review." Dkt. No. 9 at 11.

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[4] The Court does not consider Cruz-Acevedo's entirely new theory of relief in his traverse that his recent medical emergency "independently warrants immediate relief." Dkt. No. 9 at 4. "[I]t is well-settled . . . that a habeas petitioner cannot amend his petition – much less introduce wholly new claims – in his reply brief." *Calderon v. Noem*, No. 2:25-CV-2136-LK-TLF, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025) (quoting *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025)); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . in a statement of additional grounds.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

and failed to determine whether he "pose[d] a danger or a risk of flight based on individualized factors." *Id.* at 9–10. With respect to remedies, Cruz-Acevedo seeks immediate release and an injunction preventing Respondents from re-detaining him "based on the same facts and legal theory rejected by this Court, absent a lawful basis supported by new, individualized findings." *Id.* at 11–12. Respondents assert that Cruz-Acevedo offers no argument to excuse the prudential exhaustion requirement, and in any case he was provided a constitutionally sufficient bond hearing. Dkt. No. 6 at 2, 4–13.

**A.      Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const.

amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.    Prudential Exhaustion Is Not Required**

Cruz-Acevedo contends in his petition that his bond appeal proceedings before the BIA "do not provide a meaningful or timely remedy for the unlawful detention at issue here." Dkt. No. 1 at 11. Therefore, he asserts, habeas proceedings "remain[] available to challenge the legality of detention independent of ongoing administrative review" because the "existence of pending appeals does not cure a legally defective custody determination or justify continued confinement." *Id.* He argues that "remand for another bond hearing [would not] be an adequate remedy" because the "IJ has already issued a contradictory and legally defective determination, and further proceedings would only prolong unlawful detention." *Id.* Respondents argue that Cruz-Acevedo "failed to carry his burden" of demonstrating that any of the exceptions to prudential exhaustion apply because he has submitted "no allegation or evidence regarding irreparable harm, the futility of an administrative appeal, or that his administrative remedies are inadequate or inefficacious." Dkt. No. 6 at 6.

In his traverse, Cruz-Acevedo argues that further administrative review would be inadequate since his detention is "based on a constitutionally defective bond determination" and would also be futile because he raises a "legal and constitutional issue properly addressed through habeas corpus." Dkt. No. 9 at 11. Further, he asserts that "requiring exhaustion would subject [him]

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

to irreparable harm" because he "is currently suffering from a serious and potentially life-threatening medical condition, and continued detention without adequate care places him at substantial risk." *Id.*; *see* Dkt. No. 10 (declaration of Cruz-Acevedo's counsel, describing his illness).[5] He contends that the "BIA cannot provide timely relief from that harm." Dkt. No. 9 at 11. Respondents reply that counsel is inappropriately diagnosing her client with a medical crisis from afar, whereas his actual care providers attest that his symptoms have improved, his medical situation is not emergent, and he is receiving appropriate care. Dkt. Nos. 12–14.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the

---

[5] "In general, new arguments and evidence presented for the first time in a party's reply are waived." *O'Keefe v. Holland Am. Line Inc.*, No. 2:22-CV-01111-LK, 2023 WL 3058060, at *1 (W.D. Wash. Apr. 24, 2023). A court may, however, remedy a late disclosure by allowing supplemental briefing. *See Harris v. City of Kent*, No. C20-1045RSM-TLF, 2022 WL 1310080, at *5 (W.D. Wash. Mar. 11, 2022) ("When new evidence is presented in a reply brief, the court should not consider the new evidence without giving the non-movant the opportunity to respond." (citing *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996))). In light of Cruz-Acevedo's new evidence regarding his recent illness, the Court ordered Respondents to respond to his arguments regarding prudential exhaustion. Dkt. No. 11.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

Here, pursuit of administrative remedies would likely prove to be futile. It is very likely that the BIA will have no occasion to review the merits of the IJ's bond determination. The principal basis upon which the IJ denied bond is the BIA's binding decision in *Matter of Yajure Hurtado*, which adopted the government's interpretation of Section 1225(b)(2)(A) to deny bond hearings to noncitizens like Cruz-Acevedo. 29 I & N Dec. 216 (BIA 2025); *see also* Dkt. No. 7-3 at 3. It would be quite surprising if, despite its large backlog,[6] the BIA decided to review the IJ's decision on the merits rather than simply adhering to *Yajure Hurtado* by affirming based on lack of jurisdiction. *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") (citation modified). For the same reason, administrative review is unlikely to allow the agency to correct its mistakes. Furthermore, the IJ's decision is so plainly inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision. And unless most IJs begin issuing decisions with similarly incoherent and wholly constitutionally deficient reasoning, there is no risk of encouraging deliberate bypass of the administrative scheme.[7] Finally, even ignoring Cruz-Acevedo's arguments about his emergent medical condition, it is not difficult to conclude that he will suffer irreparable injury if his clearly unconstitutional detention continues while he awaits a BIA decision on the merits that may never come. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod*

---

[6] *See Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1469639, at *3 (W.D. Wash. May 26, 2026) (noting that the data in 2024 shows that "it t[ook] over six months to issue decisions in BIA custody appeals," and that "the data in 2025 indicates that the delay has exponentially worsened").

[7] If such a trend occurred, it would seem that bypass would be necessary to avoid rampant due process violations.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

*v. Burns*, 427 U.S. 347, 373 (1976))).

In light of the *Puga* factors, futility, and irreparable injury, the Court excuses the prudential exhaustion requirement here. *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error."); *W.T.M.,* 2026 WL 262583, at *3 (finding administrative exhaustion unwarranted where "the defect alleged by Petitioner [wa]s constitutional in nature, and it [wa]s unlikely that appeal to the BIA w[ould] permit the agency to correct a factual or evidentiary oversight by the IJ." (citation modified)). The Court now turns to whether the IJ's decision was an abuse of discretion.

## C.    The IJ Abused Her Discretion by Denying Bond

Respondents argue that the Court lacks jurisdiction to review discretionary bond determinations, and even on the merits, the hearing provided to Cruz-Acevedo was adequate. Dkt. No. 6 at 4, 7–13. Cruz-Acevedo contends that the IJ's bond denial constitute an abuse of discretion because "it was internally contradictory, applied the wrong legal standard, and was not based on a contemporaneous, reasoned analysis." Dkt. No. 1 at 6.

It is undisputed that Cruz-Acevedo is a member of the Bond Denial Class certified in *Rodriguez-Vazquez* and as such must be considered detained under 8 U.S.C. § 1226(a). Dkt. No. 6 at 1; Dkt. No. 1 at 4. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

Thus, the Court generally does not have jurisdiction to review discretionary bond decisions. However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196,

1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785 (citation modified).

   1. <u>The IJ's Decision</u>

  To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of

facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano*, 2026 WL 969764, at *3 (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M.*, 2026 WL 262583, at *1 (same); *Vasquez Lopez v. Hernandez*, No. C26-0775-TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (same).

Accordingly, Cruz-Acevedo's allegation in his habeas petition—that the IJ abused her discretion when she determined that he was a flight risk based solely on the lack of relief available—presents a mixed question of fact and law that the Court has jurisdiction to review. The IJ's flight risk analysis states, in full:

> The respondent is a 25-year-old single man who entered the United States without permission in 1996 as a child. The respondent provided identity documents, certificates, letters of support, and tax records. He will live in Quincy, Washington if released from custody. He has a brother and a sister in the United States. He will apply for asylum.[1] He admitted to working with a social security card that was not his. While the respondent has time in the United States. He has relatives but they cannot convey any immigration status. The respondent does not have any criminal record. He does not have a prior immigration record. Based on the record the court does not find the respondent is a flight risk. However, given the lack of available relief the court finds he is a flight risk. The court finds respondent failed to establish he is not a flight risk. Accordingly, the following orders with issue: The court found there was no jurisdiction to conduct the bond hearing. The court further orders that in the alternative the court denies the bond and or any conditions.
>
> [1] The Form 1-589, Application for Asylum and Withholding was denied by another Immigration Judge on April 13, 2026. The respondent was granted the privilege of voluntary departure.

Dkt. No. 2 at 5–6 (citations omitted; footnote reproduced).[8]

The IJ did not describe the burden of proof in her decision, but she did apply the burden to Cruz-Acevedo. *See id.* at 4. ("[A noncitizen] in a custody determination under . . . § 1226(a) . . . must establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a

---

[8] The IJ's impossible assertion that Cruz-Acevedo is 25 years old in 2026, yet entered the country 30 years ago in 1996, underscores the lack of diligence devoted to her cursory decision.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

risk of flight."); *id.* at 6 ("[T]he court finds respondent failed to establish he is not a flight risk."). Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

The federal appellate courts that have addressed this question are split. The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government—but those Circuits do not agree on the standard of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge* test before holding that with respect to a petitioner who had been in custody for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence).

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (no due process violation with respect to burden remaining with detainee to show that he is not a danger to the community or a flight risk).

The Ninth Circuit has declined to require the government to meet a clear and convincing

burden of proof to justify continued detention of a noncitizen in the specific context of a second bond hearing under Section 1226(a). *Compare Singh*, 638 F.3d at 1203 (holding that "[g]iven the substantial liberty interest at stake" for noncitizens subject to prolonged detention under Section 1226(a), "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond"); *Martinez*, 124 F.4th at 786 (in a case involving a petitioner detained under Section 1226(c), describing *Singh* as "offer[ing] the high-water mark of procedural protections required by due process"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (noting that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and concluding that the Due Process Clause did not entitle the petitioner "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

2.      Abuse of Discretion

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence, the Court finds that the IJ abused her discretion in this case. *See Martinez*, 124 F.4th at 779.

The order the IJ issued on the day of the bond hearing stated that she found Cruz-Acevedo to be a flight risk. Dkt. No. 7-2 at 2. Importantly, at that time, his asylum claim was still pending, meaning that lack of relief was not a plausible basis for the IJ's decision on that date. And clearly, the facts introduced at the hearing did not suggest that Cruz-Acevedo was a flight risk; indeed, in her bond memorandum issued three weeks later, she stated that "[b]ased on the record the court does not find [him] a flight risk." Dkt. No. 2 at 5. She based her flight decision solely on evidence not available at the time of the bond hearing; namely, that Cruz-Acevedo's requests for asylum and other relief were "denied by another Immigration Judge on April 13, 2026." *Id.* at 5 n.1; *see*

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 12

*id.* at 5–6 ("given the lack of available relief . . . he is a flight risk"). Because the IJ's written bond memorandum published on April 16 relies on a justification that she could not have relied on when she first denied bond, there is no plausible explanation for her finding that Cruz-Acevedo was a flight risk on the date of the bond hearing. Absent a legally impermissible results-driven approach, it is entirely unclear why the IJ relied on ex post facto evidence to justify the bond denial. This is a clear "red flag" that "something is amiss" with the IJ's analysis. *Martinez*, 124 F.4th at 785; *see also Singh v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-01973-DAD-CSK, 2026 WL 1328588, at *7 (E.D. Cal. May 13, 2026) ("[T]here is a clear 'red flag' in that the immigration judge failed to cite any evidence or provide any reasoning for h[is] decision." (quoting *Martinez*, 124 F.4th at 785)).

Second, the IJ provided no rational connection between Cruz-Acevedo's lack of potential forms of relief from removal and his supposed flight risk. Although IJs may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk, *see Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987), a removal order alone cannot establish that a noncitizen is a flight risk, even where relief from removal is unlikely. *See Singh*, 638 F.3d at 1205 (a final removal order "alone does not constitute clear and convincing evidence that [a noncitizen] presented a flight risk justifying denial of bond"); *Tavurov v. Noem*, No. 2:26-CV-00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) ("[T]he fact of a removal order is not sufficient by itself to deny bond" or establish flight risk); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the fact that a noncitizen has unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone").

Third, the IJ listed several factors that suggest the Cruz-Acevedo is not a flight risk (e.g., that he has lived nearly his entire life in the United States, that he has family in the United States,

that he has no prior immigration history, and that he has no criminal record) but failed to provide any explanation as to why lack of relief (or whatever negative factor she may have been relying upon at the hearing) outweighed those positive factors. "The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors." *Vasquez Lopez*, 2026 WL 984151, at *3. "The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion." *Id.*

In sum, the IJ failed to provide rationale for her finding of flight risk and failed to engage whatsoever with the factors weighing against such findings. It is clear to this Court that the IJ (1) did not apply the correct legal standard to the facts and (2) applied an impossibly high burden of proof to Cruz-Acevedo. By failing to accord Cruz-Acevedo the process due to him, the IJ abused her discretion and violated his Fifth Amendment rights. *See Minango v. Bondi*, No. 2:26-CV-00235-ART-BNW, 2026 WL 1257028, at *4 (D. Nev. May 6, 2026) (finding a due process violation where the IJ "failed to apply the correct legal standard as required by due process"); *Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026) ("Given Miri's inadequate bond hearing, Miri's continued detention fails to comply with his constitutional due process rights."); *W.T.M.*, 2026 WL 262583, at *4 (bond denial was "constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk"); *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1469639, at *7–8 (W.D. Wash. May 26, 2026); *Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 1492714, at *7 (W.D. Wash. May 28, 2026).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

**D.    Remedy**

Because Cruz-Acevedo's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for his continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren,* 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri*, 2026 WL 622302, at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond).

Cruz-Acevedo also requests permanent injunctive relief preventing Respondents "from re-detaining [him] based on the same acts and legal theory rejected by this Court, absent a lawful basis supported by new, individualized findings." Dkt. No. 1 at 12. He provides no authority to justify this request, and his petition does not allege that his re-detention is likely. *See generally* Dkt. Nos. 1, 9. Without argument or evidence that his unlawful re-detention is likely to occur, Cruz-Acevedo's request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for a permanent injunction is denied.

**III.    CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15

(1)    Respondents shall release Cruz-Acevedo from custody within 24 hours under terms consistent with Section 1226(a);

(2)    The parties shall file a Joint Status Report by June 8, 2026, confirming that Cruz-Acevedo has been released;

(3)    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja,* 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 5th day of June, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 16